IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LIGHTING PRODUCTS LIMITED, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 13 C 9185 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| ROBERTSON TRANSFORMER CO., d/b/a | ) | |
| Robertson Worldwide, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| ROBERTSON TRANSFORMER CO., d/b/a | ) | |
| Robertson Worldwide, | ) | |
| | ) | |
| Counterclaim - Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LIGHTING PRODUCTS LIMITED, SUPER X | ) | |
| MANUFACTURING, LTD., AMPCO LIGHTING | ) | |
| LIMITED, HOK CHUNG SIU (a/k/a "Billy Siu"), | ) | |
| | ) | |
| Counterclaim- Defendants. | ) | |

## AMENDED MEMORANDUM OPINION AND ORDER

Plaintiff Lighting Products Limited ("LPL") has sued defendant Robertson Transformer Co., d/b/a Robertson Worldwide ("Robertson") for breach of contract, seeking to recover on invoices for goods shipped to Robertson for which it allegedly failed to pay. Robertson responded by filing a seven count amended counterclaim against LPL, two allegedly related companies, Super X Manufacturing ("Super X") and Ampco Lighting Limited ("Ampco"), and Hoc Chung Siu ("Billy Siu"), who allegedly runs and has some ownership interest in all three companies. The counterclaim alleges: breach of a Manufacturing and Development Agreement ("MDA") (Count I); breach of a confirmed and implied-in-fact exclusivity contract (Count II);

violation of the Illinois Trade Secrets Act, 765 ILCS 1065/2(d) (Count III); breach of contract set-offs/warranty claims (Count IV); violations of the Lanham Act (Counts V and VI); and common law unfair competition (Count VII). Counts I, II and IV are brought against LPL, Super X and Billy Siu. The remaining counts III, V, VI and VII are brought against all four counter-defendants.

Ampco and Billy Siu have moved under Fed. R. Civ. P. 12(b)(2) to dismiss all claims brought against them for lack of personal jurisdiction, and all counter-defendants have moved: 1) under Fed. R. Civ. P. 12(b)(6) to dismiss the entire counterclaim for failure to state a claim; and 2) to strike portions of Robertson's answer and counterclaim. For the reasons described below, Ampco's and Billy Siu's motion to dismiss for lack of personal jurisdiction is granted. The motion to dismiss for failure to state a claim is granted in part and denied in part, and the motion to strike is denied.

## **FACTS**

Robertson is an Illinois corporation with its principal place of business in Blue Island, Illinois. It is engaged in the development and production of ballasts for use in florescent lightening. Counter-defendants LPL, Super X and Ampco are Chinese companies that manufacture, among other things, ballasts. Billy Siu allegedly owns portions of and runs each of the three counter-defendant companies.

In 1989 Robertson and Super X entered into agreements under which Super X began supplying magnetic ballasts to Robertson according to Robertson's specifications. In the 1990s electronic ballasts started to become the norm, and Robertson began to develop its own proprietary electronic ballasts. On August 14, 2001, Robertson and Super X entered into the

MDA, under which Super X agreed to manufacture and supply ballasts to Robertson pursuant to purchase orders submitted by Robertson. The MDA specifically provided that all designs, schematics, specifications and proprietary data belonged exclusively to Robertson, and that Super X or any other person or entity acting under the contract with or on its behalf in the production of the ballast was not to disclose any intellectual property nor have any right to the intellectual property except for the sale of products to Robertson. The MDA also provided that products manufactured as a result of a purchase order or pursuant to unique Robertson's specifications were to be manufactured and distributed to Robertson only.

The MDA had an initial term of three years and an automatic renewal provision for an additional three years. Neither party defaulted or terminated in writing, meaning the contract remained in force until August 14, 2007, assuming the automatic renewal provision was valid. In any event, the counterclaim alleges that the parties continued to conduct business according to the MDA's terms up to and after August 14, 2007. The counterclaim further alleges that after August 14, 2007, Billy Siu continued to represent to Robertson that Super X would protect Robertson's confidential and proprietary information and technology.

Robertson claims that between 2003 and 2005 it disclosed to Billy Siu, Super X, and Ampco its proprietary information. Siu, Super X and Ampco then used that information to develop products and supplied those products to Robertson's competitors, including General Electric Company, Etlin-Daniels, and ARN Industries, Inc., without Robertson's consent.

Sometime around 2006, Super X began supplying Robertson's electronic ballasts to Super X's other customers, which are Robertson's competitors. Robertson never authorized Super X to sell its proprietary electronic ballast to Robertson's competitors.

In March 2012 Robertson received an email from Billy Siu's son Larry, stating that Ampco had been reorganized and formed:

> "a new company called Lighting Products Limited (LPL). This new company consists of Super X, which you already know, plus some of our companies that manufacture components for the lighting industry in Europe and the USA. The purpose of this consolidation is to provide better service to our customers, improve focus on new product development and streamline operations while also reducing expenses. Since our financial year begins on April 1, we are asking our customers to start placing all orders to LPL effective immediately. For orders already placed with Super X, with ship dates later than April 1, please reissue new P.O.s to LPL."

## **DISCUSSION**

**I. Billy Siu's and Ampco's Motion to Dismiss for Lack of Personal Jurisdiction**

Both Billy Siu and Ampco argue that this court lacks personal jurisdiction over them. As counter-plaintiff, Robertson bears the burden of establishing a prima facie case of personal jurisdiction. Hyatt Int'l. Corp. v. Coco, 302 F.3d 707, 713 (7th Cir. 2002). In analyzing personal jurisdiction "the allegations in the complaint are to be taken as true unless controverted by the defendants' affidavit; and any conflicts in the affidavits are to be resolved in the [plaintiff's] favor." Turnock v. Cope, 816 F.2d, 332, 333 (7th Cir. 1987).

Robertson's two claims against Ampco are both brought under state law. When there are no federal claims, this court determines whether personal jurisdiction exists under the Illinois Long Arm Statute which is coextensive with the requirements of the Due Process Clause of the United States Constitution. Tamburo v. Dworkin, 601 F.3d 693, 700 (7th Cir. 2010). Two of Robertson's claims against Billy Siu are based on the Lanham Act, but that statute does not authorize nationwide service of process. be2, LLC v. Ivanov, 642 F.3d 555, 558 (7th Cir. 2011). As a result, personal jurisdiction over Billy Siu is also governed by the Illinois Long Arm

4

Statute. Tamburo, 601 F.3d at 700. That leaves the key question as whether Siu and/or Ampco "has sufficient 'minimum contacts' with Illinois such that the maintenance of the suit 'does not offend traditional notions of fair play and substantial justice.'" Id. at 701 (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

The nature of a defendant's contacts with the forum state determines "the propriety of personal jurisdiction and also its scope . . .." Tamburo, 601 F.3d at 701. A defendant may be subject to general jurisdiction for any claim if it has continuous and systematic contacts with the state. If general jurisdiction exists, a defendant is subject to jurisdiction in any action, even if unrelated to the contacts. Id. The threshold for general jurisdiction is very high. The defendant's contacts "must be sufficiently extensive and pervasive to approximate physical presence." Id. General jurisdiction is not, however, limited to a corporation's place of incorporation or principal place of business, or an individual's domicile. Those are just the paradigm all purpose forums. Daimler A.G. v. Bauman, __ U.S. __ 134 S.Ct. 746, 760-61 (2014). And, continuous and systematic contacts alone does not create general jurisdiction. "[T]he inquiry under Goodyear is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's affiliations with this State are so 'continuous and systematic' as to render it essentially at home in the forum state." Id. at 761 (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S.Ct. 2846, 2851 (2001)).

Specific jurisdiction, on the other hand, refers to jurisdiction over a defendant when the suit "aris[es] out of or relate[s] to the defendant's contacts with the forum." Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 n. 8 (1984). Specific personal

5

jurisdiction is appropriate when: (1) the defendant has purposefully directed its activities at the forum state or purposefully availed itself of the privilege of conducting business in the state; and (2) the alleged injuries arise out of those activities. Tamburo, 601 F.3d at 702. The exercise of specific jurisdiction must also comport with the traditional notions of fair play and substantial justice. Id.

Robertson argues that both Ampco and Billy Siu are subject to both general and specific jurisdiction. With respect to general jurisdiction, Robertson is obviously incorrect. Robertson points to Billy Siu's personal business dealings (particularly with Robertson) on behalf of Super X, LPL and Ampco, as well as other dealings through his Illinois based agents, and his somewhat infrequent travel to Illinois to conduct those dealings to demonstrate Siu's continuous and systematic contact with Illinois. But, as Daimler makes clear, continuous and systematic contact alone is not enough. The defendant's activity must be so continuous and systematic as to render it essentially "at home" in the forum state. Daimler, 134 S.Ct. At 761. Robertson has presented no evidence, or even allegations that could plausibly support a conclusion that Billy Siu is "at home" in Illinois. He does not live and has never lived in Illinois. He does not own or maintain a residence in Illinois, he does not have an office or bank account in Illinois and comes to Illinois only for specific business purposes. See e.g., Clearclad Coatings, Inc. v. Xontal, Ltd., 1999 WL 6520030, *16 (N.D. Ill. August 20, 1999).

Consequently, Robertson's claim that the court has general personal jurisdiction over Billy Siu fails. And, because Robertson argues that the court has general jurisdiction over Ampco simply because it is the alter ego of Billy Siu, the lack of jurisdiction over Billy Siu means the court also lacks general jurisdiction over Ampco.

6

Robertson also argues that the court has specific personal jurisdiction over Billy Siu because it alleges that he is personally responsible for the commission of a number of torts including violations of the Illinois Trade Secrets Act (Count III) and the Lanham Act (Counts V and VI) and common law unfair competition (Count VII). Robertson argues that in Illinois "corporate officers are liable for torts if they 'participated in the conduct giving rise to liability.'" Itofca, Inc. v. Hellhake, 8 F.3d 1202, 1204 (7th Cir. 1993) (quoting Prince v. Zazove, 959 F.2d 1395, 1401 (7th Cir. 1992).

Although this legal assertion is correct, it misses the point. The fact that Robertson may have a claim against Billy Siu does not equate to this court having personal jurisdiction over him. All of the actions alleged to have been taken by Billy Siu were taken as a corporate officer to benefit the corporation. There are no factual allegations that Siu acted in any way to put his own personal interests ahead of the corporation's. Thus, he is protected by the Fiduciary Shield Doctrine. See Rollins v . Ellwood, 141 Ill.2d 244, 253 (1990).

Robertson's final argument for specific jurisdiction over Billy Siu (and Ampco) is based on piercing the corporate veil. Essentially, Robertson argues that LPL, Super X, and Ampco are all alter egos of Billy Siu and vice versa, meaning that the jurisdictional acts of one are the jurisdictional acts of the other. See e.g. YKK USA, Inc. v. Baron, 976 F.Supp. 743, 747 (N.D. Ill. 1997).

Under Illinois law, efforts to pierce the corporate veil are "governed by the state of incorporation," which in the instant case is Hong Kong. Stromburg Metal Works, Inc. v. Press Mechanical, Inc., 77 F.3d 928, 933 (7th Cir. 1996). Because all parties appear to agree that Illinois law and Hong Kong law on piercing the corporate veil are substantially the same, and

have applied Illinois' standards, the court will do the same. Illinois law permits piercing when: (1) there is such a unity of interest and ownership that the separate personalities of the corporation and the individual no longer exists; and (2) "circumstances must be such that adherence to the fiction of separate corporate existence which sanction a fraud or promote injustice." Wachovia Securities, LLC v. Banco Panamericano, Inc., 674 F.3d 743, 751-52 (7th Cir. 2012).

Robertson's allegations fail to meet the first prong. Robertson has not alleged such a unity of interest and ownership that separate corporate personalities no longer exist. For example, the counterclaim alleges that the corporations are all commonly owned and controlled, but then alleges that each has only some common owners and that Billy Siu owns under 50 percent of each. The counterclaim alleges that Billy Siu can transfer assets between companies, but never alleges that he has made such transfers. Robertson alleges generally that the entities have failed to observe corporate formalities, but fails to allege how.

The counterclaim does allege that the corporations share common owners and directors. Indeed, each appears to be owned (at least in part) by Capital Wealth Limited, a British Virgin Island holding company owned ( at least in part) by the Siu family. But there is nothing improper about such an ownership structure absent some specific factual allegation plausibly suggesting that corporate formalities have been ignored. There is no allegation, for example, that the corporations commingle funds or use each other's bank accounts, or that Billy Siu treats the funds of any corporation as his own personal bank account.

The counterclaim does allege generally that the corporations fail to maintain "arms-length" relationships between themselves, and that Super X sold product to Ampco at cost, but

that does not demonstrate a lack of corporate formality. In short, Robertson has failed to present any plausible factual allegations of: (1) inadequate capitalization; (2) failure to issue stock; (3) failure to observe corporate formalities; (4) non-payment of dividends; (5) insolvency of the debtor; (6) non-functioning of other officers or directors; (7) absence of corporate records; (8) commingling of funds; (9) diversion of assets to the detriment of creditors; (10) failure to maintain arms-length relationships among related entities; or (11) whether in fact the corporation is a mere facade for the operation of the dominant stockholders. See <u>Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec</u>, 529 F.3d at 371, 379 (2008). Thus, the court rejects Robertson's claim of specific personal jurisdiction over Billy Siu and Ampco based on an alter ego theory. Consequently, Billy Siu's and Ampco's motion to dismiss for lack of personal jurisdiction is granted.

## II. Failure to State a Claim

All remaining counter-defendants (Super X and LPL) have moved to dismiss the entire counterclaim under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. A motion under Rule 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. <u>Gibson v. City of Chicago</u>, 910 F.2d 1510, 1520 (7th Cir. 1990). In evaluating the motion, the court accepts the well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. <u>McMillan v. Collection Professionals, Inc.</u>, 455 F.3d 754, 758 (7th Cir. 2006). To state a claim, the complaint must allege sufficient facts that, if true, would raise a right to relief above the speculative level showing that the claim was plausible on its face. <u>Bell Atlantic Corp. v. Twombley</u>, 550 U.S. 544, 555-56 (2007). To be plausible on its face, the complaint must plead

9

facts sufficient for the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

**(A) Count I**

In Count I, Robertson alleges that Super X, and LPL as it successor in interest (jointly "Super x/LPL"), breached the MDA by using Robertson's products and proprietary and confidential information disclosed to Super X pursuant to the MDA, to sell products to other customers without Robertson's prior written consent. Count I also alleges that Super X breached the agreement by failing to return all of Robertson's property, records and Intellectual Property within five days of receiving a demand to do so from Robertson.

To state a claim for breach of contract, Robertson must allege: (1) the existence of a valid and enforceable contract; (2) its own performance; (3) breach; and (4) injury. Nielson v. United Serv. Auto. Ass'n, 244 Ill.App.3d 658, 662 (2d Dist. 1993).

Super X argues that Count I fails to state a claim because it does not allege a breach by it during the term of the MDA. As noted, the MDA is dated August 14, 2001, and had an initial term of three years. It also had an automatic renewal provision providing that the agreement will "automatically renew at the expiry of the initial period for a further period of three years on the terms described in this Agreement, or as amended from time to time by express mutual written consent of both parties," unless there was a declaration of default, a mutual agreement to terminate early, or either party gives written notice of a desire to terminate. The counterclaim alleges that the agreement was never terminated and thus was operative until August 14, 2007.

Super X argues, however, that the automatic renewal provision is void because it did not meet the requirements of the then-in-force Illinois Automatic Contract Renewal Act, which

required that an automatic renewal clause appear "in a clear and conspicuous manner." C.A. 91-674, § 10.[1] If Super X is correct, then the MDA would have expired by its own terms on August 14, 2004. Even if correct, however, the counterclaim alleges that Super X (through Billy Siu's actions) began breaching the contract as early as June 2003, and continued to do so through 2007 and beyond.

Moreover, even if the MDA expired in August 2004, there is nothing in that contract that indicates that Super X's duty to maintain confidentiality of Robertson's proprietary information expired upon termination. There is no language, for example that indicates that upon termination Super X was free to begin selling to other customers parts manufactured using Robertson's confidential information. Thus, the court concludes that Count I states a claim for breach of contract against Super X/LPL.

**(B) Count II**

Count II alleges that Robertson had a valid and enforceable "exclusivity contract" with Super X/LPL based on the parties' course of conduct between August 2004 though the date Super X/LPL cut off Robertson's product supply and on Billy Siu's repeated written confirmation to Robertson from 2004 through 2008 that Super X/LPL would not sell Robertson designed products to others. Super X/LPL argues that Count II fails under the Illinois Statue of Frauds, which provides that a contract for the sale of goods for the price of $500 or more is not enforceable unless in writing. 810 ILCS 5/2-201(1). As Robertson points out, however, "the Statue of Frauds is an affirmative defense around which a plaintiff is not required to plead."

---

[1] The Automatic Contract Renewal Act was modified effective January 1, 2005, limiting its application to consumer contracts and excluding business-to-business contracts. This limitation applies to contracts executed after January 1, 2005. 815 ILCS 601/20.

Nowaczyk v. Joliet Catholic Acad., 2014 WL 3642197, *3 (N.D. Ill. July 23, 2014). "Complaints need not contain any information about defenses and may not be dismissed for that omission." Xechem, Inc. v. Bristol-Myers Squib Co., 372 F.3d 889, 901 (7th Cir. 2004). Consequently, the motion to dismiss Count II of the counterclaim is denied.

**(C) Count III**

In Count III, Robertson alleged that in 2006 it sent to Billy Siu and Super X/LPL schematics, bill of materials ("BOM") and drawing packages for CFL ballasts using an Infineon chip, and in 2009 it sent the same information for T5 ballasts using an Infineon chip. Robertson alleges that the information constituted trade secrets, that it told Billy Siu and Super X/LPL that it was sending them proprietary and highly confidential information, and that based on these communications and the parties' understanding and course of conduct Siu and Super X had a duty to maintain the secrecy of Robertson's proprietary information. Nonetheless, according to Robertson, Siu and Super X/LPL misappropriated Robertson's trade secrets in violation of the Illinois Trade Secrets Act ("ITSA") 765 ILCS 1065/2 by using them to manufacture and sell their own electronic ballast products to their other customers without Robertson's consent.

Super X/LPL argues that the counterclaim fails to allege sufficient facts to establish a violation of the ITSA. The Act requires that: (1) the information must be "sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and (2) the information must be "subject to efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality." 765 ILCS 1065/2(d).

Super X/LPL argues that the counterclaim fails to identify any information used by it that was not readily available to the public. In particular, it argues that Robertson fails to identify "what aspects of its circuits constitutes its trade secret." The cases it cites to support this argument, however, rejected trade secret claims well after the motion to dismiss stage. See e.g. Computer Care v. Serv. Sys. Entrs., Inc., 982 F.2d 1063, 1072 (7th Cir. 1992) (review of preliminary injunction); Delta Med. Sys., Inc. v. Mid-Am. Med. Sys. Inc., 331 Ill.App.3d 777 (1st Dist. 2002) (same); IDX Sys. Corp. v. Epic Sys. Corp., 285 F.3d 581, 583 (7th Cir. 2002) (summary judgment). Consequently, none lend any support to the argument that the counterclaim fails to plausibly allege that the information Robertson sent to Super X/LPL constituted trade secrets. Indeed, the counterclaim (¶¶ 53-61) specifically identifies the information sent, when it was sent, and the efforts taken by Robertson to maintain confidentiality. Because nothing more is needed at this stage, the motion to dismiss Count III is denied.

**(D) Count IV**

In Count IV, Robertson alleges that some of the ballasts that it received from Super X/LPL and then resold, experienced failures, causing Robertson to incur warranty expenses. Robertson alleges that as the supplier, and based on the MDA and the parties' course of conduct since August 2001, Super X/LPL was obligated to cover these expenses, which total $15,289.88. In addition, Count IV alleges that Robertson is entitled to set-off $31,086 in long lead time expenses from any amounts owed to Super X/LPL.

In essence, Count IV is a claim for breach of contract. It fails, however, to allege the basic elements of such a claim: (1) the existence of a valid contract; (2) performance by the

plaintiff; (3) breach by the defendant; and (4) injury. See Nielson, 244 Ill.App.3d at 662. Instead, the counterclaim simply states a course of dealing, without identifying any contract, express or even implied, governing the set-offs and warranty claims. "For course of conduct to act as consent to a contract, it must be clear that the conduct relates to a specific contract in question." Landmark Properties, Inc. v. Architects Int'l Chicago, 172 Ill.App.3d 379, 383 (1st Dist. 1988). Consequently the motion to dismiss Count IV is granted.

**(E) Counts V and VI**

Counts V and VI allege that Super X/LPL violated § 43 of the Lanham Act by repackaging Robertson's products, and by misrepresenting their nature in commercial advertising without crediting Robertson's contribution. 15 U.S.C. § 1125(a)(1)(A), (B). Section 43(a) (1) provides:

> any person who, or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another persons goods, services, or commercial activities.

Robertson's § 43 claims are foreclosed by the Supreme Court's decision in Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 37 (2003), which holds that the phrase "origin of goods" "refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." Under this

14

definition, Super X/LPL, as the entity that manufactured the ballasts in question, is the origin of the products it sold. Robertson has not and is unable to allege that Super X/LPL took goods manufactured by Robertson and then repackaged them as its own. The counterclaim (¶¶ 31, 38) clearly identifies Super X/LPL as the manufacturer. Consequently, Counts V and VI fail to state a claim and are dismissed.

### (F) Count VII

In Count VII Robertson alleges that Super X/LPL's misappropriation of its investment, labor, resource and proprietary and confidential information constitutes common law unfair competition. It then alleges that these unlawful acts are "wholly separate and apart from the patent infringement claims pending before Judge Bucklo [in Case No. 12 C 8094] and from the trade secret claims alleged in Count III of the instant counterclaim, which this court has sustained. Count VII contains no factual allegations to support these conclusory statements, and no allegations to suggest that Count VII is anything other than a second disguised trade secret claim. Accordingly, Count VII is dismissed.

### III. Motion to Dismiss and to Strike

LPL has moved to strike Robertson's affirmative defense of "failure to state a claim," arguing that it is not an affirmative defense. Fed. R. Civ. P. 12(h)(2) provides that failure to state a claim upon which relief can be granted may be raised in any pleading allowed or ordered under Rule 7(a), or by a motion under Rule 12(c), or at trial. Although the better course would be to raise this in a motion, because the Rule provides for it to be raised in an answer the motion to strike it is denied.

Finally, LPL has moved to strike paragraph 49 of the counterclaim because it refers to settlement negotiations. The statements identified in paragraph 49 and allegedly made by Billy Siu are submitted to support Robertson's alter ego allegation, not liability. Thus, Fed. R. Evid. 408 is inapplicable. The motion to strike paragraph 49 is denied.

## CONCLUSION

For the reasons discussed above, Billy Siu's and Ampco's motion to dismiss the amended counterclaim for lack of personal jurisdiction (Doc. 44) is granted. Super X/LPL's motion to dismiss for failure to state a claim and to strike (Doc. 47) is granted in part and denied in part. The motion to dismiss is granted as to Counts, IV, V, VI, and VII, and denied as to Counts I, II and III. The motion to strike the affirmative defense of failure to state a claim is denied. The motion to strike paragraph 49 of the counterclaim is denied. Super X and LPL are directed to answer the remaining counts by March 13, 2015. The remaining parties are directed to prepare and file a joint status report on or before March 20, 2015, and appear for a report on status on April 7, 2015, at 9:00 a.m.

**ENTER:** **February 17, 2015**

_____
**Robert W. Gettleman**
**United States District Judge**